UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

STEPHEN NOBLE

Defendant.

Action No. 3:07–CR–431

MEMORANDUM OPINION

I.  INTRODUCTION

THIS MATTER is before the Court on defendant Stephen Noble's (hereinafter "Noble") Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 53.)  Noble is proceeding pro se in this matter and appears to advance three basic claims in support of his Motion.  First, Noble contends that his sentence was improperly calculated; second, he contends that he received ineffective assistance from his counsel; and third, he contends that his ineligibility for early release under the Bureau of Prisons' Residential Drug Abuse Treatment Program (hereinafter "BOP" and "RDAP") raises equal protection concerns under the Fourteenth Amendment.  The United States' opposes Noble's Motion both on the merits and on the grounds that he has defaulted upon his claims by failing to raise them on the direct appeal he forfeited in his plea agreement.

After reviewing the filings of the parties and the record in this case, it is the conclusion of the Court that these claims should be dismissed and the Motion denied

1

without a hearing as "the files and records of the case conclusively show that the prisoner is entitled to no relief." 18 U.S.C. § 2255(b).

## II. BACKGROUND

### A. Underlying Offense and Sentence

On April 10, 2008, this Court sentenced Noble to a term of 60 months imprisonment (with credit for time served) on his plea of guilty to the charge of conspiring to possess and distribute cocaine hydrochloride, in violation of 21 U.S.C. § 846. In his plea agreement, Noble stated that he was pleading guilty because he was, in fact, guilty of conspiring with others in the Eastern District of Virginia to distribute and possess with the intent to distribute cocaine hydrochloride. Noble further stated that on October 19, 2007, he traveled with his co-conspirators to distribute the same but was stopped by police before he could make the planned transaction. Noble admitted that officers subsequently recovered 486.4 grams of cocaine hydrochloride from the vehicle. Noble acknowledged that the maximum penalty for this offense was 40 years imprisonment and a fine of $1,000,000, plus full restitution, a special assessment, and at least three years of supervised release.[1] Noble also acknowledged that the usual procedural rights had been respected and that he had received effective assistance from his counsel. Finally, Noble agreed to waive his right to appeal the sentence imposed on any ground set forth in 18 U.S.C. § 3742 or "on any ground whatsoever".

---

[1] While the text of the plea agreement states that the maximum penalty for the offense to which Noble was pleading was 40 years imprisonment, the statement of facts contains acknowledged modifications reducing the charged amount of cocaine hydrochloride below 500 grams and he was sentenced accordingly.

At the sentencing hearing, the Court adopted the probation officer's recommendation of an offense level of 25 and a criminal history category of I, resulting in a recommended sentence of 57-71 months imprisonment under the United States Sentencing Guidelines then in effect. During these proceedings, Noble's counsel objected to the probation officer's conclusion that he should be held accountable for 609.9 grams of cocaine hydrochloride, when he had only been found with 486.4 grams. This total incorporated an additional 123.5 grams sold by a co-conspirator one month prior. This sale followed one of Noble's prior deliveries. Noble also objected to the probation officer's conclusion that a firearms enhancement was applicable since one of Noble's co-conspirators was found to be carrying a pistol in his waistband at the time of the arrest. These objections were noted in the pre-sentence report and in the minutes from the sentencing hearing.

B. Posture and Nature of Motion

In November 2008, Noble filed a motion pursuant to 18 U.S.C. § 3582 seeking a reduction of his sentence based on the disparity between sentencing recommendations for powder and crack cocaine. The motion was denied because it sought to raise arguments more properly framed as claims under 28 U.S.C. § 2255. This Motion was received on December 2, 2008, and filed on January 12, 2009. An Amended Motion was filed on March 18, 2009, and the claims asserted by Noble were expanded in the Reply he filed on May 26, 2009.

In his initial filing, Noble alleged two grounds for his Motion. First, he contended that the Court erred when it imposed a two point offense level enhancement based on his co-conspirator's possession of a firearm. Second, Noble contended that as a deportable

3

immigrant, he is being required to serve a longer sentence than would a similarly situated citizen or non-deportable immigrant because he cannot receive a one year sentence reduction for participating in the BOP's RDAP program.

In his amended filing, Noble first reiterated his objection to the imposition of a firearms enhancement in the sentencing guidelines.  Second, Noble contended that the Court erred when declining to find him eligible for the safety valve provision of U.S.S.G. § 5C1.2(a) because of the presence of a firearm.  Third, Noble contended that the Court erred in holding him accountable for the drugs sold by his co-conspirator, which resulted in a higher offense level under the guidelines.  Fourth, Noble contended that his attorney failed to provide him with effective assistance by failing to raise objections regarding the firearms enhancement, the finding that Noble was ineligible for "safety valve treatment", and the amount of cocaine hydrochloride for which he was held accountable.  In a related motion, Noble also requested an evidentiary hearing and the appointment of counsel.

After the filing of Noble's Amended Motion, the United States filed a Response in which it argued that because Noble's allegations of error ran to the calculation of a sentencing recommendation under the guidelines, they were not cognizable under § 2255, and that, in any case, Noble waived his right to appeal any sentence imposed which was less than the statutory maximum.  The United States further argued that Noble's plea agreement specifically stated that he had received effective assistance of counsel and that, in any case, he could not show the cause or prejudice required to perfect such a claim.  Finally, the United States argued that Noble was not precluded from receiving an early

4

discharge for RDAP participation because he is an immigrant, but because he has been convicted of a violent offense.

Noble's third filing, his Reply to the Government's Response, reiterates his previous arguments, but introduces a new allegation: that his attorney refused or failed to file a notice of appeal when requested. Noble contends that this constitutes per se ineffective assistance of counsel and that his appealable claims are not barred. Noble has also submitted a series of motions seeking bail during the pendency of his § 2255 Motion and a "motion for summary judgment".

## III. DISCUSSION

28 U.S.C. § 2255 provides prisoners under the sentence of a Federal court with a procedural vehicle to challenge the constitutional and jurisdictional validity of their sentences. 28 U.S.C. § 2255(a). Relief may be sought under § 2255 where "the sentence was imposed in violation of the Constitution or laws of the United States" or " the sentence imposed was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). A motion brought under § 2255 must specify all grounds for relief available to the moving party, state the facts supporting each ground, state the relief requested, and be presented in a legible manner. See Rules Governing Section § 2255 Proceedings for the United States District Courts, Rule 2.

The claims raised in a motion pursuant to § 2255 must also be brought within one year of the date on which the judgment became final, an unconstitutional and governmentally created impediment to the motion was removed, the right asserted was first

recognized by the Supreme Court, or the facts supporting the claim presented could have been discovered through the exercise of due diligence, whichever is later. 28 U.S.C. § 2255(f)(1)-(4). However, a post-limitation amendment to a § 2255 motion will relate back under Federal Rule of Civil Procedure 15©, provided that it does not assert a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading. See Mayle v. Felix, 545 U.S. 644, 656-665 (2005)(petition raising Sixth Amendment confrontation claims cannot be amended to include claims related to pre-trial violations of Fifth Amendment). In Mayle, the Supreme Court rejected the notion that an entire criminal proceeding could be considered a single "transaction or occurrence" and instead required that amendments be "tied to a common core of operative facts". See Mayle, 545 U.S. at 664; see also United States v. Pittman, 209 F.3d 314, 317-18 (4th Cir. 2000)(finding that 'purpose' of one year time limit would be frustrated by broad conception of 'transaction of occurrence').

Although it is not an express requirement of the statute, the so called "Frady Rule" requires that where a defendant has defaulted on a claim of error by failing to pursue it on a direct appeal, he must show that a "miscarriage of justice" would occur if he were not allowed to pursue a subsequent collateral attack. See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999)(citing United States v. Frady, 456 U.S. 152, 167-68 (1982)). In order to have the default set aside, a defendant must show that there was cause for the default external to the defense and that the defendant was prejudiced by it, see Frady, 456 U.S. at 167-68, and show that a miscarriage of justice would occur in the

6

absence of a collateral appeal by demonstrating his "actual innocence" through clear and convincing evidence, see Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Mikalajunas, 186 F.3d at 493.  The Fourth Circuit has implicitly suggested that the waiver of a right to take a direct appeal of a sentence effectively bars a defendant from raising claims cognizable on such an appeal in the context of motion pursuant to § 2255.  See United States v. Hoyle, 33 F.3d 415, 419 (4th Cir. 1994).  However, as this Court explained more fully in Butler v. United States, while a defendant may validly waive both his right to a direct appeal and his right to bring a § 2255 motion, the right to challenge the effectiveness of his counsel and the voluntariness of his plea cannot be waived.  173 F.Supp.2d 489 at 493 (E.D.Va. 2001); see also Moon v. United States, 181 F.Supp.2d 596, 601-03 (E.D.Va. 2002)(waiver of ineffective assistance of counsel at sentencing cannot be waived in prior plea agreement).

    Once a § 2255 Motion is filed, a court must order the United States to respond and conduct a prompt hearing on the matter, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . ." 18 U.S.C. § 2255(b); see also United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000)(requiring evidentiary hearing where issues of fact persisted regarding failure to file appeal).  However, where the only issues presented are questions of law, or where all evidence necessary to analyze the merits of a motion is included in a movant's brief and the court's records, an evidentiary hearing may not be necessary.  See, e.g., United States v. Burroughs, 650 F.2d 595, 599

7

9th Cir. 1981)(denying motion for hearing and motion to appoint counsel when record was complete).

With these standards in mind, the Court turns its attention to Noble's claims regarding the calculation of his sentence, the effectiveness of his counsel, and his treatment by the BOP.

### A. Sentence Calculation Claims

A defendant mounting a collateral attack on his sentence via a motion pursuant to § 2255 must prove, by a preponderance of the evidence, that his sentence or conviction was imposed in violation of the United States Constitution or laws, or that the court was without jurisdiction to impose it. See 28 U.S.C. § 2255(a); Butler, 173 F.Supp.2d at 492. Since the United States Sentencing Guidelines are now only advisory in nature, see United States v. Booker, 543 U.S. 220, 260-62 (2007), it stands to reason that a technical error in calculating the recommended sentence cannot result in a sentence that is either illegal or unconstitutional, so long as the sentence itself does not exceed the statutory range. This proposition was actually adopted by the Fourth Circuit before Booker in United States v. Pregent, where it held that challenges to guideline calculations are rarely cognizable via collateral attack and that where they were not challenged on a direct appeal, a defendant must show cause, prejudice, and a miscarriage of justice to raise them on under § 2255. 190 F.3d 279, 283-84 (4th Cir. 1999); Mikalajunas, 186 F.3d at 495-496 (citing similar authorities from other circuits).

Nevertheless, under the current sentencing regime, a district court's formulation of a sentence which is appropriate under 18 U.S.C. § 3553(a) should begin with a calculation of the appropriate guideline range before reaching an independent determination of what is reasonable within the permitted statutory range.  See United States v. Gall, 552 U.S. 38, 49 (2007)(court "should begin" with guidelines); see also Rita v. United States, 551 U.S. 338, 351 (2007)(describing this as common practice).  In calculating the appropriate sentence under the guidelines, the Court need not rely only on facts that have been proven beyond a reasonable doubt.  See, Booker, 543 U.S. at 250-255 (finding this the fundamental flaw with the mandatory conception of the guidelines and noting history of independent judicial inquiry prior to sentencing).  The first step in calculating a guideline recommended sentence is to determine the range of possible offense levels associated with the crime of which a defendant has been convicted, see U.S.S.G. § 1B1.2(a)(2008),[2] however, the second step is to determine if any "relevant conduct" warrants either the assignment of a particular base offense level or the adjustment of the base range due to the specific characteristics of the offense, see U.S.S.G. § 1B1.3.  As the Application Notes specifically state "the principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability", thus, where a "jointly undertaken criminal activity" led to a defendant's conviction, he may be held accountable for acts taken in furtherance of

---

[2]All references to the United States Sentencing Guidelines cite the version of the guidelines in effect in 2008 when Noble was sentenced.

the jointly undertaken activity and reasonably foreseeable in connection with that activity. U.S.S.G. § 1B1.3, Application Notes 1 & 2.[3]

This concept of relevant conduct is used throughout the guidelines, including in the "safety valve" exception described in U.S.S.G. § 5C1.2, which authorizes guideline recommendations below a statutory minimum where certain conditions are met. See U.S.S.G. § 5C1.2(a). In order to be eligible for this "safety valve" a defendant cannot have "possess[ed] a firearm or other dangerous weapon (or induce[d] another participant to do so) in connection with the offense" or have an overall offense level higher than seventeen. U.S.S.G. §§ 5C1.2(a)(2) & (b). While the Application Notes state that use of the term "offense" in this subsection is consistent with its use elsewhere in the guidelines, the Fourth Circuit has previously stated in dicta that for the purposes of § 5C1.2, the mere possession of a weapon by a co-conspirator does not preclude the application of the "safety valve". See United States v. Wilson, 114 F.3d 429, 432 (4th Cir. 1997). Nevertheless, the Fourth Circuit has held a district court's application of this guideline, and all others, is reviewed only for clear error and, in Wilson, ultimately upheld an enhancement based on a defendant's possession of a firearm during the overall course of conduct. Id. at 432.

In light of the foregoing, it appears that Noble's sentencing claims must fail. First, claims which challenge the calculation of sentencing guidelines are not usually cognizable under § 2255 as they do not effect the legality or constitutionality of a sentence. See

---

[3]The guidelines specifically suggest that a defendant regularly involved with others in a scheme to buy and sell drugs may be held accountable for the entire quantity distributed over several sales, just as a participant in a bank robbery may be held accountable for the assault of a bank teller. U.S.S.G. § 1B1.3 Illustrations (a)(1) & (b)(1).

Pregent, 190 F.3d at 283-84; Mikalajunas, 186 F.3d at 495-496.  Second, since these claims might have been cognizable on a direct appeal but were not raised there, it would appear that they are barred under the rule of Frady, 456 U.S. at 167-68, see also, Hoyle, 33 F.3d at 419, unless Noble can demonstrate his actual innocence by clear and convincing evidence, so as to make his current sentence a miscarriage of justice.  See Murray, 477 U.S. at 488.

Even so, it does not appear that the Court erred in reaching the conclusions it did during the sentencing process.  To begin, the Court adopted the probation officer's recommendation that Noble be held accountable for 609.9 grams of cocaine.  In holding Noble accountable for the drug weight arising from both the arrest and the prior controlled buy, the Court was squarely within the bounds of U.S.S.G. § 1B1.3.  While Noble notes that the Court must consider each defendant's involvement in the criminal conduct separately, distinguishing relevant conduct from the liability of a co-conspirator, there is nothing in the record to suggest that the Court did not undertake such an inquiry.  Indeed, the pre-sentence report notes that the controlled buy at issue took place concurrently with a prior delivery of cocaine by Noble.  Similarly, the Court's decision to apply the firearms enhancement was also justified under the concept of relevant conduct set out at § 1B1.3.  The subsection specifically states that a defendant may be held accountable for "all reasonably foreseeable acts . . . in furtherance of [a] jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).  Since the probation officer's investigation revealed that the firearm was carried by an individual paid to provide protection against the known threat of

robbery during the drug transaction, it can hardly be argued that the presence of the weapon was a surprise to Noble or was unrelated to the underlying criminal activity. Finally, whether or not the presence of the firearm should precluded the application the safety valve provisions of U.S.S.G. § 5C1.2 is simply irrelevant as Noble was not subject to any minimum sentence since he did not plead to conspiring to possess and distribute more than 500 grams of cocaine hydrochloride but only possession and distribution generally. Compare 18 U.S.C. §§ 841(b)(1)(B) & ©.

Since the record conclusively shows that Noble is entitled to no relief on these claims, this portion of his Motion is denied without a hearing.

### B. Ineffective Assistance of Counsel Claims

Claims that a defendant did not receive the effective assistance of counsel guaranteed under the Sixth Amendment, see McCann v. Richardson, 397 US. 759 (1970), are evaluated under the well established precedent of Strickland v. Washington, 466 U.S. 668, 687 (1984). See United States v. Luck, __F.3d__, 2010 WL 2635812 (4th Cir. 2010)(applying Strickland). Under Strickland, a claim that a judgment resulted from counsel's ineffectiveness must be supported by a showing 1) that counsel's performance was deficient and 2) that this deficiency prejudiced the defense. 466 U.S. at 687. To satisfy the first prong of Strickland, a counsel's representation must have fallen "below an objective standard of reasonableness" as measured by "prevailing professional norms". Id. at 688. A court must be deferential when reviewing choices made by counsel and "have a strong presumption that counsel's conduct falls within the wide range of reasonable professional

12

assistance." Id. at 689. To satisfy the second prong of Strickland, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different", such that "confidence in the outcome" of the proceeding is undermined. Id. at 694. Thus, in Luck, the Fourth Circuit concluded that where an attorney had failed to request a jury instruction regarding the credibility issues surrounding testimony of paid informants in a drug conspiracy, his performance was both deficient and prejudicial given the overall weakness of the prosecution's case. See 2010 WL 2635812 at *4-8. However, in Moon, this Court declined to find that an attorney's failure to object to a guideline increase based on a defendant's use of a firearm "in connection" with a drug trafficking crime was objectively reasonable when there was ample evidence that the gun had, in fact, been used in connection with the crime and the attorney diligently pursued other objections. See 181 F.Supp.2d at 603-04. However, counsel has little discretion with regard to the filing of an appeal. See Roe v. Flores Ortega, 528 U.S. 470 (2000). In Flores Ortega, the Supreme Court held that an attorney has a duty to consult with a defendant regarding the filing of an appeal where 1) a rational defendant would want to appeal, or 2) a defendant reasonably demonstrated to his attorney that he was interested in appealing. Id. at 480. The Fourth Circuit has affirmed that counsel is duty bound to file an appeal if requested, even if the right to appeal has been waived. See United States v. Poindexter, 492 F.3d 263, 268-70 (4th Cir. 2007)(right to appeal persisted); see also Witherspoon, 231 F.3d at 296 (remanding for evidentiary hearing to resolve conflicting allegations).

13

Noble's ineffective assistance of counsel claims focus on the failure of his counsel to object to the Court's consideration of the drug weight from the prior sale, the Court's imposition of a two point firearms enhancement, and the Court's failure to utilize the safety valve provisions of U.S.S.G. § 5C1.2.  In order to prevail on any of these claims under the two part Strickland test, Noble must show that his attorney's failure to raise these objections was "below an objective standard of reasonableness" and that there was a "reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different.  See 466 U.S. at 687-94; Moon, 181 F.Supp.2d at 601-03.  Noble cannot make this showing.  While the Government argues, incorrectly, that the plea agreement's clauses regarding Noble's satisfaction with his counsel bar his ineffective assistance claim here, see Moon, 181 F.Supp.2d at 601 (ineffective assistance claims related to sentencing cannot be barred in prior plea agreement), the real obstacle is that Noble's attorney raised the first two claims and was under no obligation to raise the third.

The pre-sentence report and the sentencing minutes on file both confirm that objections were raised regarding both the increased drug weight and the firearms enhancement.  While Noble has attempted to cast his attorney's ineffectiveness as arising from a "failure to investigate"or a "failure to prepare a legal framework", the Court must "have a strong presumption" that his counsel's conduct was proper.  Strickland, 466 U.S. at 689.  Since, Noble has not alleged additional facts which would suggest that the arguments failed because of his counsel's incompetence and not their utter lack of legal merit, his

14

claims fail to meet the requirements of Strickland. See cf. Moon, 181 F.Supp.2d at 603 (failure to raise baseless objection not deficient performance).

Insofar as the safety valve provisions of § 5C1.2 are concerned, Noble correctly notes that this issue does not appear to have been raised at the sentencing hearing. However, in his own filings Noble admits that counsel told him that he was not eligible for a safety valve reduction because there was no mandatory minimum from which he required relief. In light of the fact that § 5C1.2 was inapplicable in this case, Noble's arguments fail to meet the test of Strickland. See 466 U.S. at 687.

In an apparent attempt to evade the implications of his waivers and procedural defaults, Noble alleges in his Reply to the Government's Response to his Amended § 2255 Motion that he instructed his counsel to file an appeal but that his counsel refused. These allegations were not raised in either of Noble's earlier filings and cannot be considered for the first time now, see Rules Governing Section § 2255 Proceedings, Rule 2 (motion must contain all grounds for relief), nor can Noble's Reply be construed as further amendment of his original motion, as the time bar of § 2255(f) fell across this case before his Reply was filed, and these claims cannot relate back to his original motion as they do not arise from the same transaction or occurrence as his other ineffective assistance claims and involve a fundamentally different core of operative facts. See Mayle, 545 U.S. at 656-665 see also United States v. Pittman, 209 F.3d at 317-18.

### E. Fourteenth Amendment Claims

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall deny any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To prevail on an Equal Protection claim, a party must first "demonstrate that he has been treated differently from others with whom he is similarly situated" and that "the unequal treatment was the result of intentional or purposeful discrimination." See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)(discussing equal protection in context of prisoner's § 1983 suit against Commonwealth). After this threshold showing has been made, the Court must then determine whether the treatment can be justified under the requisite level of scrutiny. See id.

RDAP is a product of the Violent Crime Control and Law Enforcement Act of 1994, encoded at 18 U.S.C. § 3621, and requires the BOP to "make available appropriate substance abuse treatment for each prisoner the BOP determines has a treatable condition of substance abuse addiction or abuse." 18 U.S.C. § 3621(b). As an incentive to participate in such a treatment program, the statute provides that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [drug] treatment program may be reduced by the [BOP], but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). The BOP has promulgated regulations to guide the determination of which prisoners "may" receive reductions in their sentences. See 28 C.F.R. § 550.58 (2010). Under these regulations, a decision to release a prisoner is "an exercise of the discretion vested in the Director of the Federal Bureau of Prisons", but may not be granted to prisoners who are INS detainees,

pretrial inmates, contractual boarders, inmates with certain prior convictions for serious crimes, inmates who are not eligible for participation in community-based programs, and inmates whose current offense is a felony involving physical force against a person, a dangerous weapon, the threat of force, or the sexual abuse of children. 28 C.F.R. § 550.58(a). Under both § 3621 and the BOP's own regulations, early release is a discretionary reward for completion of the RDAP program and a prisoner has no "right" to the twelve month credit. See Lopez v. Davis, 531 U.S. 230, 240-45 (2001)(upholding both discretionary nature of relief and categorical exclusions in regulations). While the Fourth Circuit has not specifically considered the matter, other district courts have concluded that the refusal to offer early release to an RDAP participant due to one of these exclusions does not raise equal protection concerns. See Sanford v. Whitehead, 2009 WL 2857913 (D.Md. 2009)(applying Lopez in context of § 2241 proceeding brought by violent offender).

In light of these authorities, Noble's claims that the BOP's policies regarding deportable prisoners are resulting in an equal protection violation are not cognizable. This is logical as a § 2255 motion challenges the constitutionality and legality of the "sentence" imposed, see 28 U.S.C. § 2255(a), as opposed to the propriety of the "custody", see 28 U.S.C. §§ 2241© & 2254(a) (motions challenging custody). Further the discretionary nature of the early release option and the categorical exclusion of certain groups has repeatedly passed constitutional muster. See e.g., Lopez, 531 U.S. at 240-45; Sandford, 2009 WL 2857913. Thus, his inability to avail himself of the early release option is of no

moment to the constitutionality or legality of this Court's sentence, or its jurisdiction over him.

Since the record conclusively shows that Noble is entitled to no relief on his Fourteenth Amendment claim, this portion of his Motion is also denied.

## V. CONCLUSION

As the record conclusively shows that Noble is not entitled to the relief he seeks on any of the claims raised pursuant to 28 U.S.C. § 2255, it is not necessary for the Court to conduct further hearings or investigations into these matters. Noble's Motion is thus denied.

An appropriate order shall issue.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and Defendant.

> /s/
> James R. Spencer
> Chief United States District Judge

ENTERED this __7th__ day of September 2010